| | |
|---|---|
| RUSSELL GREGORY, III, In his capacity as Personal Representative of the Estate of Mary Fisher, and in his capacity as Guardian of ___, a Minor, the heir of Mary Fisher, deceased, | ) ) ) ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF MEMPHIS, OFFICER PATRICK S. TAYLOR, individually and as an employee of the Memphis Police Department, and OFFICER JOEL O. BIRD, individually and in his official capacity as an officer and employee of the Memphis Police Department, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICER PATRICK S. TAYLOR, | ) |
| | ) |
| Cross-Claimant and/or Counter-Claimant, | ) ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF MEMPHIS, Cross-Defendant, and RUSSELL GREGORY III, in his capacity as Personal Representative of the Estate of Mary Fisher, and in his capacity as Guardian of ___, a Minor, the heir of Mary Fisher, deceased, Counter-Defendant. | ) ) ) ) ) ) ) ) ) ) |

No. 07-02445

| | |
|---|---|
| RUSSELL GREGORY, III, In his capacity as Personal Representative of the Estate of Mary Fisher, and in his capacity as Guardian of ___, a Minor, the heir of Mary Fisher, deceased, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | )<br>) |
| and | )<br>) |
| PATRICK TAYLOR, | )<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | ) |

**Nos.    09-2054, 09-2730**

---

### ORDER GRANTING UNITED STATES'
### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

Plaintiff Russell Gregory III ("Gregory"), as Personal

Representative of the Estate of Mary Fisher ("Fisher") and the

Guardian of Fisher's heir, her minor child, brings suit for

deprivation of Fisher's Fourth Amendment rights, state law

torts, and negligence under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 2671, et seq.  Gregory's claims against

the City of Memphis ("Memphis"), Memphis Police Officer Patrick

Taylor ("Taylor"), Memphis Police Officer Joel Bird ("Bird"),

and the United States of America (the "United States" or the

"Government") were consolidated by Order of the Court on August

1, 2012.  (ECF No. 136.)  Taylor's claim against the United

States for negligence under the FTCA was also among the claims

consolidated.  (Id.)

Before the Court is the United States of America's April

27, 2012 combined Motion to Dismiss the complaints of Gregory

and Taylor for lack of subject-matter jurisdiction.  (Mot. to

Dismiss, ECF No. 160.)  Gregory responded on July 19, 2012.

(Gregory's Resp., ECF No. 174.)  Taylor responded on August 23,

2012.  (Taylor's Resp., ECF No. 182.)  The United States replied

on September 24, 2012.  (Reply, ECF No. 198.)  For the following

reasons the United States' Motion to Dismiss is GRANTED.

## I.  Background

This case arises from the death of U.S. Marshal Mary Fisher on

May 13-14, 2006.  The facts are those alleged in Gregory's

complaint (Compl. 09-cv-2054, ECF No. 1), unless otherwise

indicated. During the week of May 10-14, 2006, Fisher attended a

United States Marshal Service ("USMS") training seminar in

Atlanta, Georgia.  (Id. ¶ 6.)  Fisher's supervisor Scott Sanders

3

("Sanders") was present at the seminar and was well acquainted
with Fisher's normal behavior and appearance. (Id.) Taylor
contends that other supervisors and employees of the USMS
(collectively with Sanders the "Marshals") were present on May
13 and observed Fisher's bizarre and unusual behavior at all
relevant times. (Compl. 09-2730, ¶ 9, ECF No. 1.) On the
morning of May 13, Fisher reported high blood pressure and
displayed an altered mental state, causing Sanders to to tell
her he would fly to Memphis with her. (Compl. 09-2054, ¶ 7.)
Fisher refused and returned to Memphis in her government-owned
vehicle. (Id.) Both Plaintiffs contend that the Marshals had
actual knowledge that Fisher was mentally unwell, in need of
medical attention, and in possession of a firearm. (Compl. 09-
2730, ¶ 13-16; Compl. 09-2054, ¶ 8.)

Sanders instructed Fisher to follow a specified route to
Memphis and spoke with her several times during her drive.
(Compl. 09-2054, ¶ 10.) Fisher did not comply with Sanders'
instructions and displayed paranoid thoughts. (Id.) The
Marshals did not attempt to stop Fisher in Nashville. (Compl.
09-2730, ¶ 22.) When Fisher returned to her home in Memphis,
she called the local police twice to dispatch an officer based
on her mistaken belief that an intruder was in her home.
(Compl. 09-2054, ¶ 12.) Fisher left her home and drove around
Memphis and Shelby County for several hours in her personal

vehicle.  (Id.)  She was in contact with the local Marshal's
office, two Marshals attempted to locate her, and the Marshal's
office issued an alert to local police.  (Id.)  The Marshals did
not attempt to locate Fisher using the GPS chip in her gun.
(Compl. 09-2730, ¶ 23.)  Fisher reported to Sanders that she was
being followed by local police officers.  (Compl. 09-2054, ¶
13.)  Sanders had posted Marshals at Fisher's home, but at or
before 3 a.m. he instructed them to leave.  (Id. ¶ 14.)  At
approximately 6:15 a.m. on May 14, two Memphis police officers,
Taylor and Bird, approached Fisher in the driveway of her home.
(Compl. 09-2730, ¶ 25.)  The officers asked Fisher to exit her
vehicle, but she refused.  When they approached, Fisher fired
her gun, hitting Taylor in the leg.  (Id.)  Fisher was shot
several times by the officers and was fatally wounded.  (Compl.
09-2054, ¶ 15.)

The Government answers that Fisher had been employed as a
Deputy United States Marshal for 14 years, that she attended the
training seminar in Atlanta during the week preceding her death,
that she left the seminar in a government vehicle on May 13 and
returned to her home in Cordova, Tennessee, on the same day.
(U.S. Answer to Compl. 09-2054, ¶ 6; ECF No. 9.)  The Government
alleges that Fisher was observed by Memphis police officers
driving her personal vehicle recklessly on the morning of May 14
and that she was pursued to her home.  (Id.)  It alleges that

she would not exit her vehicle when asked and that she fired on the officers striking one in the leg, after which the officers returned fire and Fisher was fatally wounded. (Id.)

## II.  Standard of Review

The Government's combined Motion to Dismiss for Lack of Subject Matter Jurisdiction has not been timely made.  Under Federal Rule of Civil Procedure 12(b), "a motion asserting any of the[] defenses" listed in Rule 12(b), including a "lack of subject-matter jurisdiction," must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  The complaints the Government seeks to dismiss were initially the basis of separate cases, Gregory v. United States, 09-cv-2054, and Taylor v. United States, 09-cv-2730, before consolidation with Gregory v. Memphis.  (See Amended Order Consolidating Cases for Trial and Closing Cases Administratively, ECF No. 136.) Before filing its current motion, ECF No. 160, the Government filed answers to the two complaints.  (09-cv-2054, ECF No. 9; 09-cv-2730, ECF No. 12.)

The Government did not explicitly raise the defense of lack of subject-matter jurisdiction in either answer.  (See Id.)  "Every defense to a claim of relief in any pleading must be asserted in the responsive pleading if one is required."  Fed. R. Civ. P. 12(b).  In its answer in the 2009 Gregory case, the Government stated only that, "[i]f the death of Mary L. Fisher is covered

by the Federal Employee's Compensation Act, plaintiff's complaint is barred by the provisions of 5 U.S.C. § 8116(c)." (09-cv-2054, ECF No. 9, ¶ 12.) In its answer in the Taylor case, the Government stated only that "[a]ll claims of negligent supervision of Mary Fisher are barred by the discretionary function exception to the [FTCA]." (09-cv-2730, ECF No. 12, ¶ 14.)

The defense of lack of subject-matter jurisdiction is not waived by a failure to include it in a responsive pleading or by an improperly made motion. See Fed. R. Civ. P. 12(h)(1). A court may raise the question of subject-matter jurisdiction at any time, and in fact "district courts are obligated to sua sponte consider whether they have subject-matter jurisdiction." Spencer v. Stork, No. 12-1503, 2013 U.S. App. LEXIS 2579, at *3 (6th Cir. Feb. 4, 2013); see also Fed. R. Civ. P. 12(h)(3).

Subject matter jurisdiction is a threshold determination. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). When a defendant raises the issue of lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction to survive the motion to dismiss. DXL, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack "is a challenge to the sufficiency of the pleading itself."  Id.  The Court "must take the material allegations of the petition as true and construe [them] in the light most favorable to the nonmoving party."  Id.  A factual attack is a challenge to the factual existence of subject matter jurisdiction.  "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter."  Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir.2005).  To resolve the dispute, courts "have wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  No presumption of truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  Ritchie, 15 F.3d at 598; Moir, 895 F.2d at 269.

**III. Analysis**

     **A. Facial Attack on Gregory and Taylor's Complaints**

The Government states that its Motion is a facial attack only. Gregory's Response argues that the Government's Motion is actually a motion to dismiss for failure to state a claim under Rule 12(b)(6). He argues that he has pled sufficient facts to allege the Court's jurisdiction and that the Government's contention that its actions are exempt from FTCA coverage is actually an argument that there is no set of facts under which relief can be granted. (Pl.'s Resp., n.3.) The Government's motion is more accurately understood as a factual attack under Rule 12(b)(1), arguing that the Court does not have jurisdiction to hear Gregory's claims because of the FTCA exception.

The Government argues that both Plaintiffs fail to allege the basis of subject-matter jurisdiction in their complaints, and therefore that the complaints should be dismissed. The Government's argument is not well-taken. When a 12(b)(1) motion "attacks the face of a complaint, 'plaintiff's burden to prove federal question subject matter jurisdiction is not onerous.'" Strange v. United States, No. 96-1281, 1997 U.S. App. LEXIS 13079, at * 5-6 (6th Cir. May 30, 1997) (quoting Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1248 (6th Cir. 1996)). Plaintiff must "show only that the complaint alleges a claim under federal law, and that the 'claim is substantial.'" Id. "A federal claim is substantial 'unless prior decisions inescapably render [it] frivolous.'" Id. A

"'plaintiff can survive [a 12(b)(1)] motion by showing any arguable basis in law for the claim made.'" Id.

Both Plaintiffs allege that the basis for the Court's jurisdiction is a claim arising under the FTCA and that the Court has federal question jurisdiction under 28 U.S.C. § 1346(b). (Compl. 09-cv-2054; Compl. 09-cv-2730.) Both allege that the United States is the proper defendant as the employer at all relevant times of the decedent and her supervisors. (Id.) Both allege that they suffered "injury or death caused by the negligent or wrongful act or omission of an[] employee of the Government while acting within the scope of his office," and allege the circumstances establishing that negligence. 28 U.S.C. § 2675. (Id.) Both allege that they have exhausted the available administrative remedies as required by the statute and that their complaints are made in compliance with the various requirements of the FTCA statute of limitations. (Compl. 09-cv-2054; Compl. 09-cv-2730.) No prior decisions render the claims frivolous. The body of FTCA precedent is extensive and, because of the nature of the exceptions, the question of jurisdiction is often highly fact dependent. No prior decision in this Circuit is so factually indistinguishable that there is no arguable legal basis for these claims to be brought.

Accepting the Plaintiffs' facts as true and interpreting them in the manner most favorable to the Plaintiffs as required for a

facial attack under Rule 12(b)(1), both complaints are sufficient to allege subject-matter jurisdiction.

## B. Factual Existence of Subject-Matter Jurisdiction Over Gregory's Claims

Both Plaintiffs' complaints are facially sufficient to establish subject-matter jurisdiction. Although the Government asserts that it is making a facial challenge only, the Court has an independent obligation to determine the factual existence of subject-matter jurisdiction. The Government raises affirmative objections to the Plaintiffs' allegation of jurisdiction and submits extrinsic factual information that it asks the Court to weigh in determining whether it may hear the Plaintiffs' claims. That is a factual challenge. When a court considers a factual challenge, it weighs the evidence provided by both parties and gives no deference to the plaintiff's alleged facts. The burden is on the plaintiff to establish the existence of subject-matter jurisdiction.

The Government argues that the Court lacks jurisdiction to hear Gregory's FTCA claim because the discretionary-function exception applies to the Marshal's acts that Gregory alleges were the proximate cause of Fisher's death. The Government also argues that jurisdiction is barred on the alternative ground that there is a "substantial question" about coverage for

Fisher's death under the exclusive remedy of the Federal

Employee's Compensation Act ("FECA"), 5 U.S.C. §§ 8101, et seq.

**1. The Discretionary-Function Exception**

The limited waiver of sovereign immunity in the FTCA is

subject to a number of exceptions.  See 28 U.S.C. § 2680.  The

Government argues that the actions the Marshals took on May 13

and 14, 2006, are excluded from judicial review by the

discretionary-function exception to the FTCA.  28 U.S.C. §

2680(a).  Section 2680(a) states that "[t]he provisions of [28

U.S.C. §§ 2671, et seq.]...shall not apply to – any claim based

upon...the exercise or performance or the failure to exercise or

perform a discretionary function or duty on the part of a

federal agency or employee of the government, whether or not the

discretion involved be abused."  Id.

To determine "whether allegedly tortious conduct falls

within the discretionary-function exception, [the Sixth Circuit]

applies the Supreme Court's two-pronged Gaubert test." Milligan

v. United States, 670 F.3d 686, 693 (6th Cir. 2011).  The first

prong requires the Court to determine "'whether the challenged

actions were discretionary, or whether they were instead

controlled by mandatory statutes or regulations.'" Id. (quoting

Gaubert, 499 U.S. 315, 328 (1991)).  Whether a requirement is

mandatory is determined by whether the actor "had any element of

judgment or choice in taking his course of action." Id.

12

(internal quotation omitted).  A function is not discretionary if "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee ha[s] no rightful option but to adhere to the directive.'"  Id. (quoting Rosebush v. United States, 119 F.3d 438, 441 (6th Cir. 1997).  If the court determines at the first prong that the conduct is discretionary, it reaches the second prong and "inquires 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'"  Id. (quoting Gaubert, 499 U.S. at 322-23).

The "crucial first step in deciding whether the conduct was discretionary 'is to determine exactly what conduct is at issue' and identify which specific policies or regulations the plaintiff alleges were violated."  Id. (quoting Rosebush, 119 F.3d at 441).  The burden is on the plaintiff to establish subject-matter jurisdiction when a court examines the factual existence of jurisdiction.  Neither Gregory's complaint nor his response to the Government's motion identifies a statute, regulation, or policy that the Marshals were required to comply with or that their conduct violated.  Gregory was entitled to supplement the record, but he chose not to do so.  See Hatcher v. United States, No. 12-5489, 2013 U.S. App. LEXIS 1787, at *4

(6th Cir. Jan. 24, 2013).[1]  Gregory argues that he asked the
Government to provide him with copies of all relevant
regulations and policies, and because it has not done so the
Court should assume that at least one such policy exists and
premise its jurisdiction on that assumption.  (Gregory's Resp.,
ECF No. 174.)  Gregory's argument is not a sound basis to extend
the Court's authority where, as here, he could have subpoenaed
documents or moved the Court to allow limited discovery.  See
Hatcher, 2013 U.S. App. LEXIS 1787, at *4.  Applying the first
prong of the Gaubert test and weighing Gregory's lack of
evidence against the Government's Declaration that the General
Counsel of the USMS does not know of any statutes, regulations,
or agency directives requiring a particular course of action in
the circumstances of this case, the Court finds that the
Marshals were performing a discretionary function.  (Auerbach
Declaration, ECF No. 161-1.)

    Because there was an element of judgment in the actions of
the Marshals, the Court must decide whether the decisions were
of the kind that the discretionary-function exception was
designed to shield under the second prong of the Gaubert test.
The exception was designed to "'prevent judicial second-guessing
of legislative and administrative decisions grounded in social,

---

[1] Gregory's response includes an attached excerpt from Sanders' Deposition.
The excerpt relates exclusively to Sanders' knowledge that Fisher was
experiencing unusual physical and mental symptoms on May 13 and is not
germane to this analysis.  (See ECF No. 174-1.)

economic, and political policy through the medium of tort.'"
Milligan, 670 F.3d at 693 (quoting Gaubert, 119 U.S. at 323).
The discretionary-function exception's "scope extends beyond
high-level policymakers, and includes government employees at
any rank exercising discretion." Kohl v. United States, 699
F.3d 935, 940 (6th Cir. 2012). Even when the government action
in question is "on the day-to-day operational level, and
implements broader governmental objectives," if that action
involves judgment that is "'susceptible to policy analysis' then
it falls within the discretionary-function exception." Id.
(quoting Gaubert, 499 U.S. at 325).

The exact contours of the conduct at issue are particularly
important for the second prong of the analysis. Gregory frames
the conduct narrowly. He argues that the Marshals acted
negligently by failing to disarm Fisher, a trained agent who was
allegedly obviously mentally and physically ill, by failing to
provide her with medical attention, by failing to stop her from
driving to Memphis, by failing to intercept her during her trip
to Memphis, and by failing to post a sufficient number of
Marshals at her home for a sufficient time to take her into
custody. Gregory argues that decisions not to act to prevent
reasonably foreseeable harm to an employee are not the kinds of
decisions that the discretionary-function exception seeks to
protect.

Gregory's characterization "begs the question" because it essentially asks whether the Marshals had discretion to deal with Fisher's medical condition in an unsafe and negligent manner. Kohl, 699 F.3d at 942 (quoting Autery v. United States, 992 F.2d 1523, 1528 (11th Cir. 1993)). The Sixth Circuit has consistently rejected plaintiffs' attempts to characterize the actions of the Government narrowly because to do so "'collapses the discretionary function inquiry into a question of whether the [government] was negligent'" when negligence is irrelevant to the inquiry at the point of determining subject-matter jurisdiction. Id. (quoting Rosebush, 119 F.3d at 442 (alteration in original)); see also Bell v. United States, No. 99-5563, 2000 U.S. App. LEXIS 28064, at *11 (6th Cir. Nov. 6, 2000) (finding that the conduct at issue was the Postmaster's decision to leave the lobby of the post office open to the public after hours and not a decision to maintain the lobby in an unsafe manner).

The Government's characterization of the Marshals' choices as decisions about how to supervise personnel and how to distribute and use resources is more appropriate. These are areas of administrative agency discretion that are susceptible to policy and economic analysis and that the discretionary-function exception is designed to protect. See, e.g., Burkhart v. Washington Metro. Area Trans. Auth., 112 F.3d 1207, 1217

(D.C. Cir. 1997) ("The hiring, training, and supervision choices that [a government entity] faces are choices 'susceptible to policy judgment' ....[S]upervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety.")  The connection with policy and decision-making here establishes that the Government's conduct falls within the discretionary-function exception.  The requirement of a "policy nexus is an objective not a subjective one," the inquiry is "whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of policy analysis." Rosebush, 119 F.3d at 444 (quoting Gaubert, 499 U.S. at 324-25).

### 2. FECA

The Court need not decide the Government's alternate ground for denying subject-matter jurisdiction.  When a government employee's injury or death is covered by FECA, the remedy is "exclusive and instead of all other liability of the United States."  5 U.S.C. § 8116(c).  The "action of the Secretary [of Labor] or his designee in allowing or denying a payment under [FECA] is – (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or a court by mandamus or otherwise."  5 U.S.C § 8128.  If an injury is covered by FECA, the Court does not have jurisdiction to hear

the case.  If the Secretary of Labor reaches a final decision, the Court has no authority to challenge or modify it.  The Government argues that there is a substantial question about whether Gregory's claim is covered by FECA and that the Court is without jurisdiction until the Secretary of Labor makes a final decision on coverage.  Gregory contends that his claim is clearly not covered by FECA and that the Court has jurisdiction to hear his FTCA claim.

If the Court agrees that there is a substantial question of coverage, the appropriate action is to "stay proceedings pending the final decision of the Secretary."  McDaniel v. United States, 970 F.2d 194, 198 (6th Cir. 1992).  If the Court agrees that there is no substantial question, Gregory's FTCA claim goes forward.  Because the Court has already determined that it has no jurisdiction to hear Gregory's FTCA claim, the case must be dismissed regardless of the applicability of FECA.

The Court does not have subject-matter jurisdiction to hear Gregory's FTCA claim against the Government.  His complaint is DISMISSED.

### C. Factual Existence of Subject-Matter Jurisdiction Over Taylor's Claims

### 1. The Discretionary-Function Exception

Plaintiff Taylor submits several exhibits to support his contention that the Marshals' actions were mandated by

directives.  His attachments include a copy of the USMS's

Employee Assistance Program ("EAP") guidelines and excerpts from

the depositions of Taylor's law enforcement expert David Grossi

and Marshals John Clark, Lawrence Flagg, Scott Sanders, and

Thomas Boock.  (ECF No. 182-1; 182-2; 182-3; 182-4; 182-5; 182-

6.)

The depositions of Clark, Flagg, Sanders, and Boock are not

germane.  The exerpts deal almost exclusively with the Marshals'

alleged negligence during the events surrounding Fisher's death.

Whether the Marshals behaved negligently under the circumstances

does not address whether they were operating under mandatory

directives or within their discretion.  Clark's deposition is

the only one to mention the EAP or any other regulation. To the

extent it does, it seems to support the Government's argument

that decisions made under the EAP involve the exercise of

discretion.  (ECF No. 182-3.)

The excerpt from Grossi's deposition speaks at length about

the EAP and conveys Grossi's opinion that the EAP is a directive

and that its procedures are mandatory.  Grossi's opinion is not

persuasive.  First, although Taylor has submitted Grossi as a

"law enforcement expert", the Court has not accepted him as an

expert, and his testimony has no more weight than lay opinion.

Second, and more important, Grossi's opinion about whether the

EAP is mandatory does not assist the Court.  The EAP itself is

before the Court. If it imposes a mandatory course of action on the Marshals, it must do so on its face. Grossi's opinion is not a substitute for what the language of the EAP requires. The Court itself must decide the legal significance of the guidelines. See, e.g., Montez v. United States, 359 F.3d 392, 395-97 (6th Cir. 2004).

To the extent Taylor's argument relies on the EAP's procedures for Critical Incident Stress Situations ("CISS"), those procedures are inapplicable in this case. The parties disagree about whether Fisher's medical and emotional symptoms constitute "any event an employee experiences on or off the job that is outside the realm of normal human experience and that could produce significant emotional, behavioral, or physical reactions." (EAP § D(9), ECF No. 182-1.) Based on the definitions in EAP §§ G(2)-G(5), Fisher's condition was not within the "[c]ategor[y] of traumatic incidents" that the CISS procedures are intended to cover. (EAP § D(9)(d).) Those traumatic incidents include, for example, "any incident involving an employee fatality; shoot-outs; a shooting; suicide or attempted suicide of a fellow worker, prisoner, witness, etc.; an explosion; a hostage situation; a plane crash; working with dead bodies and/or body parts; an employee missing or presumed dead; and violent or traumatic injury to an employee." (EAP § G(2).) Although the definitions are non-exclusive and

include some incidents that are arguably less severe than those listed, the procedures apply only to serious events that are inflicted on a Marshal by something external to herself. Fisher's alleged illness does not qualify as a CISS event, and the CISS procedures do not apply.

Taylor cites two other sections of the EAP that he argues imposed a mandatory duty on the Marshals to take a particular course of action. Taylor contends that EAP § D(2) is a mandatory directive. Section D(2) provides that, "after becoming aware of a personal or family problem that is affecting an employee's conduct or work performance, a manager <u>should</u> make the necessary referral to the EAP Administrator." (Pl.'s Resp.)(emphasis added by Plaintiff). Taylor also argues that EAP § D(2)(c) is a mandatory directive. Section D(2)(c) provides that, "[i]f an employee is unable to perform law enforcement duties, he or she <u>should</u> be relieved of any weapons and credentials and, when appropriate, assigned administrative duties." (<u>Id.</u>) (emphasis added by Plaintiff). The Government argues that "should" is a permissive term and that these procedures are not mandatory.

It is well established that the use of the word "may" in a statute or regulation generally renders that directive permissive, while the use of explicitly mandatory words such as "shall," "will," or "must" generally renders that directive

compulsory.  See, e.g., Montez, 359 F.3d at 397 ("The use of the word 'may' in these regulations, rather than 'shall,' demonstrates that their implementation is left to the discretion of BOP officials.").  The Sixth Circuit has not directly addressed the preferred interpretation of the word "should," but as the Government points out, the Ninth Circuit has on several occasions.  In Sabow v. United States, the Ninth Circuit found that the directives cited by the plaintiffs did not prescribe a course of action for purposes of the discretionary-function exception because the "provisions cited by the [plaintiffs] are cast in suggestive ('should') rather than mandatory ('must') terms."  93 F.3d 1445, at *15 (9th Cir. 1996).  In Weissich v. United States, the Ninth Circuit found that, for purposes of the discretionary-function exception, guidelines that provided that "the circumstances of probationers 'should' be reviewed periodically to determine if they pose a reasonably foreseeable danger," contained "language [that was] suggestive, not mandatory."  4 F.3d 810, 814 (9th Cir. 1993).

Although the parties focus narrowly on the words used in the EAP, there is no "simple mechanical test for determining whether a provision should be given mandatory effect," and when "determining whether...provisions are mandatory or discretionary," a court should look more broadly at the "language, legislative history, and purpose" of the provisions.

<u>United States v. Marsten Apts.</u>, 175 F.R.D. 265, 268-69 (E.D. Mich. 1997) (citations omitted).

Reading the EAP as a whole it is clear that the regulation's intent is to provide procedures that may be used at the discretion of supervisors.  It is apparent in a number of places that the supervisor has the discretion to act or not to act.  EAP § D(2)(a), a subsection of one of the sections on which Taylor seeks to rely, provides that "[a] manager <u>may</u> refer an employee to the EAP as a result of documented unsatisfactory work performance or deteriorating work performance and/or behavior or conduct that indicates the presence of a personal problem."  (emphasis added).  EAP § D(2)(b) provides steps to follow "[w]hen a manager suspects a problem," and § D(2) states that the EAP policy "should be used in conjunction with management's right to take disciplinary or adverse actions based upon an employee's job performance."  Most importantly, the EAP does not include any directives that define or mandate when an employee is "unable to perform law enforcement duties."  Although the EAP states that a person in this condition "should be relieved of any weapons and credentials," it is clear that the determination of whether a Marshal is unable to perform her law enforcement functions is in the discretion of her supervisors.

Given the language of the EAP as a whole and supervisors'
discretion in deciding when to invoke its procedures, the EAP is
not a mandatory directive that imposes a required course of
action on the Marshals.  Whether the Marshals were negligent in
choosing not to invoke the EAP procedures is not at issue
because the discretionary-function exception applies "whether or
not the discretion involved be abused."  28 U.S.C. § 2680(a).

Considering the second prong of the Gaubert analysis, the
decisions made by the Marshals are of the kind that the
discretionary-function exception is intended to protect.  "'When
established governmental policy, as expressed or implied by
statute, regulation, or agency guidelines, allows a Government
agent to exercise discretion, it must be presumed that the
agent's acts are grounded in policy when exercising that
discretion.'"  Montez, 359 F.3d at 397 (quoting Gaubert, 499
U.S. at 324).  Taylor has not overcome that presumption.

Taylor's narrow characterization of the Marshals' decisions
collapses the inquiry into one of negligence.  Like Gregory,
Taylor argues that the Marshals acted negligently by failing to
disarm Fisher, a trained agent who was allegedly obviously
mentally and physically ill, by failing to provide her with
medical attention, by failing to stop her from driving to
Memphis, by failing to intercept her during her trip to Memphis,

and by failing to post a sufficient number of Marshals at her home for a sufficient time to take her into custody.

The Government's characterization of these actions as decisions about supervision of personnel and allocation of resources is more appropriate.  These are the kinds of decisions that the discretionary-function exception is designed to protect.

Taylor also alleges that the Government's decision not to adequately warn local law enforcement of the danger Fisher posed is not the type of decision the exception is intended to protect.  First, the Marshals did issue an alert to local police.  The adequacy of that alert is a question of fact that need not been decided.  Second, characterizing the Government's decision more broadly, as the Court is required to do, it is settled law in the Sixth Circuit that "the decision whether to warn of potential danger is a protected discretionary function." Rosebush, 119 F.3d at 443.  Taylor also argues that the Marshals' decision not to prevent a dangerous situation by locating Fisher using the GPS chip in her gun is not the kind of decision that is intended to be protected.  This argument also fails because, characterizing the Government's decision more broadly, it is settled law in the Sixth Circuit that "[d]ecisions concerning the proper response to hazards are

protected from tort liability by the discretionary function
exception." Id.

### 2. The Policeman's Rule

The Government argues in the alternative that jurisdiction
is barred by the Tennessee Policeman's Rule.  Under 28 U.S.C. §
1346(b)(1), district courts "shall have exclusive jurisdiction
of civil actions on claims against the United States...under
circumstances where the United States, if a private person,
would be liable to the claimant in accordance with the law of
the place where the act or omission occurred."  The parties
agree that the law of the State of Tennessee applies to Taylor's
claim.  Taylor does not contest the Government's assertion that
the injuries he received arise out of risks particular to his
profession as a police officer.

The Government contends that, under the Policeman's Rule,
which "precludes firefighters and police officers from
recovering damages for injuries arising out of risks peculiar to
their employment," a private person would not be liable to a
policeman for injuries resulting from the private person's
negligent actions.  Jamison v. Ulrich, 206 S.W.3d 419, 422
(Tenn. Ct. App. 2006).  Taylor argues that the Rule is intended
to apply only when an individual calls for help because the
underlying policy of the Rule is to encourage citizens to rely
on local law enforcement without fear that tort liability could

result.  (Taylor's Resp.)  He contends that no Tennessee case
has applied the Rule where a policeman or firefighter was not
summoned to the scene by the person from whom he seeks to
recover.  (Id.)  Taylor also argues, based on Bridges v. City of
Memphis, 952 S.W.2d 841 (Tenn. Ct. App. 1997), that, because the
Rule does not preclude suits by public safety officers against
municipalities and their component entities, it would be
contrary to the purpose of the Rule to preclude suits against
the United States.  (Id.)

    Taylor's arguments are not well taken.  His attempt to
interpret the Tennessee courts' stated policy justification for
maintaining the Rule as a limitation on its application is
unwarranted.  The "existence or nonexistence of a duty owed to
the plaintiff by the defendant is entirely a question of law for
the court."  Jamison, 206 S.W.3d at 423.  The law as stated by
the Tennessee Supreme Court is that policemen are precluded
"from recovering damages for injuries arising out of risks
peculiar to their employment," because a citizen owes no duty of
reasonable care.  Carson v. Headrick, 900 S.W.2d 685, 687 (Tenn.
1995).  Taylor's alleged factual distinction is not persuasive.
The only recognized exception to the Rule "allow[s] recovery for
a policeman or firefighter who is injured by the intentional,
malicious, or reckless acts of a citizen."  Jamison, 206 S.W.3d
at 425; see also Carson, 900 S.W.2d at 691.  Taylor does not

27

allege that the Marshals' actions were anything other than negligent.

Taylor's argument based on <u>Bridges</u> is also unavailing. Section 1346(b)(1) explicitly states that the liability of the United States is that of a private person under the law of the place where the act or omission occurred. The government of the United States cannot be equated to the government of the City of Memphis. Other governments, whether state or local, are not comparable.

The court in <u>Bridges</u> reaffirmed that "police officers and firefighters in Tennessee are not permitted to sue members of the public for injuries that arise out of risks peculiar to their employment" while holding that the City of Memphis was not immune on the same grounds for its negligence. 952 S.W.2d 847-48. Because a private person could not be liable to Taylor for the injuries he sustained while in the line of duty as a police officer, the Government cannot be liable for his injuries. Because the Government cannot be liable for Taylor's injuries, the Court does not have jurisdiction to hear his claim.

The Court does not have subject-matter jurisdiction over Taylor's FTCA claim against the Government. His complaint is DISMISSED.

**IV.  Conclusion**

For the foregoing reasons, the Government's Motion to Dismiss for Lack of Subject-Matter Jurisdiction is GRANTED.  Gregory's complaint against the Government is DISMISSED.  Taylor's complaint against the Government is DISMISSED.

So ordered this 26th day of March, 2013.

s/ Samuel H. Mays, Jr.____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE