IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RUSSELL GREGORY, III, In his        )
capacity as Personal                )
Representative of the Estate        )
of Mary Fisher, and in his          )
capacity as Guardian of ___, a      )
Minor, the heir of Mary             )
Fisher, deceased,                   )
                                    )        No. 07-02445
    Plaintiff,                      )
                                    )
    v.                              )
                                    )
CITY OF MEMPHIS, OFFICER            )
PATRICK S. TAYLOR,                  )
individually and as an              )
employee of the Memphis Police      )
Department, and OFFICER JOEL        )
O. BIRD, individually and in        )
his official capacity as an         )
officer and employee of the         )
Memphis Police Department,          )
                                    )
    Defendants,                     )
                                    )
and                                 )
                                    )
OFFICER PATRICK S. TAYLOR,          )
                                    )
Cross-Claimant and/or Counter-      )
Claimant,                           )
                                    )
    v.                              )
                                    )
CITY OF MEMPHIS, Cross-             )
Defendant, and RUSSELL GREGORY      )
III, in his capacity as             )
Personal Representative of the      )
Estate of Mary Fisher, and in       )
his capacity as Guardian of         )
___, a Minor, the heir of Mary      )
Fisher, deceased,                   )
                                    )

|                          | )   |
| ------------------------ | --- |
| **Counter-Defendant.**   | )   |

---

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

The gravamen of this action is Plaintiff Russell Gregory III's ("Gregory") claim under 42 U.S.C. § 1983 for deprivation of his decedent Mary Fisher's ("Fisher") rights under the Fourth Amendment to the Constitution of the United States. Defendant the City of Memphis ("Memphis") removed Gregory's Complaint to this Court on June 28, 2007. (Compl., ECF No. 1-2.) On July 20, 2007, Defendant Officer Patrick Taylor ("Taylor") filed a counterclaim against Gregory and a crossclaim against Memphis. (Taylor Answer, ECF No. 7.) Before the Court are the September 21, 2012 Motions for Summary Judgment of Memphis (Memphis Mot., ECF No. 196), Defendant Officer Joel Bird ("Bird") (Bird Mot., ECF No. 193), and Taylor (Taylor Mot., ECF No. 195). Bird and Taylor's motions address Gregory's Complaint. Memphis' motion addresses both Gregory's Complaint and Taylor's crossclaim.

On November 21, 2012, Taylor filed a Response in opposition to Memphis' Motion for Summary Judgment as it applied to Taylor's crossclaim. (Taylor Resp., ECF No. 217.) On December 10, 2012, Gregory filed Responses in opposition to Memphis' Motion for Summary Judgment (Gregory Resp. Memphis, ECF No. 220), Bird's Motion for Summary Judgment (Gregory Resp. Bird,

2

ECF No. 218), and Taylor's Motion for Summary Judgment (Gregory Resp. Taylor, ECF No. 219).  Bird replied on December 21, 2012. (Bird Reply, ECF No. 226.)  Memphis replied on January 4, 2013. (Memphis Reply, ECF No. 232.)

For the following reasons Memphis' Motion for Summary Judgment on Gregory's claims is GRANTED.  Memphis' Motion for Summary Judgment on Taylor's crossclaim is DENIED.  Bird's Motion for Summary Judgment on Gregory's claims is GRANTED. Taylor's Motion for Summary Judgment on Gregory's claims is GRANTED.

### I.   Background

This case arises from the death of U.S. Marshal Mary Fisher ("Fisher") on May 13-14, 2006.  On the morning of May 13, 2006, Fisher left a Marshal training exercise in Atlanta, Georgia, and drove her government-issued vehicle to Memphis, Tennessee. (Gregory Resp. to Memphis' Undisp. Facts ¶¶ 1-5, ECF No. 220-2.) The parties dispute when Fisher began to experience symptoms of physical and mental illness, such as high blood pressure, dizziness, and erratic behavior, and whom she may have informed of her condition.  (Id. ¶¶ 5-6.)  When she arrived in Memphis at approximately 10:30 p.m., Fisher called a co-worker, Lawrence Flagg ("Flagg"), and asked that he come to her house because she believed someone was attempting to break in.  (Id. ¶¶ 7-8.) When Flagg arrived, Fisher drove away at high speed.  (Id. ¶ 9.)

Flagg asked Thomas Boock ("Boock"), another Marshal, and two Shelby County Police Deputies to meet at Fisher's home, where Boock asked the officers to issue a "Be On The Lookout" alert ("BOLO") for Fisher.  (Id. ¶¶ 10-13.)  No Marshal contacted the Memphis Police Department with information about Fisher or the BOLO.  (Id. ¶¶ 15-19.)  The Shelby County Dispatch Office contacted the Memphis Police Department Communications Center about the BOLO at approximately 11:34 p.m. on May 13.  (Id. ¶ 20.)  It is undisputed that neither Bird, Taylor, nor their supervising officer received the BOLO or the information in it. (Gregory Resp. to Bird Undisp. Facts ¶ 119, ECF No. 218-2.)

At approximately 6:00 a.m. on May 14, Bird observed a female in a white BMW, later identified as Fisher, driving recklessly near the scene of a one-car accident in Memphis. (Id. ¶¶ 1-4.)[1]  Another Memphis Police Officer on the scene of the accident reported Fisher's reckless driving and asked that additional officers be sent to the scene.  He was told to block traffic at the intersection, but Fisher drove off the road to avoid the blockade.  (Id. at ¶¶ 9-12.)  Taylor arrived at the scene and decided to follow Fisher with his lights and siren

---

[1] Gregory's response to Bird's statement of undisputed facts is referred to for all matters relating to the events of May 14, 2006, after Memphis Police initially made contact with Fisher.  Bird and Taylor's statements are substantively identical and Gregory's responses to both are substantively identical.  Memphis' statement of undisputed facts focuses on the training and supervision of officers and is less detailed about the events of May 14, 2006.

activated.  (Id. at ¶¶ 13-17.)  Bird drove after Taylor, and both followed Fisher, who continued driving erratically, into a residential neighborhood.  The parties dispute whether Fisher continued to drive recklessly.  (Id. at ¶¶ 18-27.)

Fisher pulled into a residential driveway close to a garage, and Taylor parked his squad car immediately behind her vehicle with Bird's squad car immediately behind his.  (Id. at ¶¶ 33-35.)  The Officers approached Fisher's car, which was still running, with Taylor, acting as the primary officer, going first and Bird, as the secondary or cover officer, following behind him on the driver's side of the car.  (Id. at ¶¶ 36-38, 40.)  The parties disagree about whether normal procedure required Bird to approach from the passenger side and the reason for Bird's failure to do so.  (Id. at ¶ 39.)  Fisher had a "blank look on her face and just stared at Taylor."  She "did not respond or say anything to the Officers" when they attempted to make contact with her.  (Id. at ¶¶ 42-44.)  Taylor opened the car door and either asked or ordered Fisher to step out of the car.  (Id. at ¶ 45.)  Fisher became confused, and Taylor attempted verbally to calm her down, but she did not respond. Taylor decided that she was "not receiving the information that he was trying to give her."  (Id. at ¶¶ 46-48.)

Fisher put the car in gear and attempted to back out of the driveway, but was blocked by Taylor's squad car.  (Id. at ¶ 49.)

The parties dispute the number of times that Taylor turned off the ignition in Fisher's car and how many times she turned it on again.  They also dispute how Taylor attempted to control her. (Id. at ¶ 50.)  Fisher remained verbally unresponsive, but moved her hands around so that Taylor could not grab them.  (Id. at ¶ 51, 53.)  Taylor took out his chemical agent, but Bird asked him not to use it.  (Id. at ¶¶ 54-55.)  Bird and Taylor were both trained as members of the Memphis Crisis Intervention Team ("CIT"), and Bird decided that Fisher was probably a candidate for CIT assistance.  (Id. at ¶¶ 56-57.)  Bird continued to attempt to calm Fisher and get her to step out of the car, but she remained unresponsive.  (Id. at ¶¶ 59-60.)

Fisher leaned back into the car and pulled a handgun out of the console area of the vehicle.  (Id. at ¶¶ 62.)  Bird and Taylor both verbally alerted that Fisher had a gun.  (Id. at ¶¶ 63.)  Fisher pointed the gun at Taylor, who attempted to take cover behind the open door of the car, and she began shooting. (Id. at ¶¶ 64-65.)  Although Bird and Taylor both state that Fisher shot first, Gregory's proposed ballistics expert contends that the shot sequence cannot be conclusively determined based on the physical evidence.  (Id. at ¶¶ 66-67.)  Taylor sustained a bullet wound in his right leg from Fisher's first shot and could not move to safety, so he began firing at Fisher through the car door and window.  (Id. at ¶ 69, 71-72, 75-76.)  The

parties dispute the reason for Bird's failure to draw his weapon
when Fisher began shooting and whether he attempted to draw
Fisher's fire.  (Id. at ¶¶ 68, 70.)  Taylor continued to fire at
Fisher, and Bird fired one shot toward Fisher.  (Id. at ¶¶ 77-
78.)  Bird stated that he perceived his and Taylor's lives to be
in danger when he fired his weapon.  (Id. at ¶ 79.)

Fisher's "body relaxed and the gun went down on her lap" so
Bird approached, took the gun from her and threw it into the
grass.  (Id. at ¶¶ 80-81.)  The parties dispute how much Bird
was able to observe of Fisher's condition at the time.  (Id. at
¶ 82.)  Bird reported the shooting and called for two
ambulances, but he had to move his squad car to the end of the
street to determine the address of the scene.  (Id. at ¶¶ 84-
88.)  The parties dispute the sequence of events after other
officers arrived, when medical assistance was provided to
Fisher, and whether Fisher was dead when the paramedics arrived.
They agree that the paramedics described Fisher's condition as
"dead on arrival," but Gregory disputes whether that was the
case.  (Id. ¶¶ 110-114.)

## II.  Jurisdiction

Gregory seeks damages under 42 U.S.C. § 1983.  The Court has
federal question jurisdiction under 28 U.S.C § 1331.  The Court
has supplemental jurisdiction over Gregory's state law claims
under 28 U.S.C. § 1367 because they derive from a "common

7

nucleus of operative fact." See 28 U.S.C. § 1367; United Mine
Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, on motion of a
party, the court "shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  The moving party can meet this burden by
pointing out to the court that the non-moving party, having had
sufficient opportunity for discovery, has no evidence to support
an essential element of his case.  See Fed. R. Civ. P. 56(c)(1);
Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011)
(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary
judgment, the non-moving party must set forth specific facts
showing that there is a genuine dispute for trial.  See Fed. R.
Civ. P. 56(c).  A genuine dispute for trial exists if the
evidence is such that a reasonable jury could return a verdict
for the non-moving party.  See Wasek v. Arrow Energy Servs., 682
F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).  The non-moving party
must "'do more than simply show that there is some metaphysical
doubt as to the material facts.'"  Phelps v. State Farm Mut.
Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting

_Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 586 (1986)).   A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.   See _Beckett v. Ford_, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing _Celotex Corp._, 477 U.S. at 324).   Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor." _Stalbosky v. Belew_, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1).   The court does not have the duty to search the record for such evidence.   See Fed. R. Civ. P. 56(c)(3); _InterRoyal Corp. v. Sponseller_, 889 F.2d 108, 111 (6th Cir. 1989).   The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor.   See Fed. R. Civ. P. 56(c)(1); _InterRoyal Corp._, 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." _FDIC v. Jeff Miller Stables_, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

The local rules of this district set out specific requirements that must be met by the non-moving party.   The party opposing

summary judgment must respond to each fact set forth by the moving party by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed. W.D. Tenn. L.R. 56.1 (b).  The non-moving party must make specific citations to the record to support each contention that a particular fact is in dispute.  Id.  The non-moving party's failure to respond as required to the moving party's statement of material facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment."  W.D. Tenn. L.R. 56.1(d).

## IV.  Analysis

### A. Individual Defendants

Gregory brings suit against Bird and Taylor for violation of Fisher's Fourth Amendment rights under 42 U.S.C. § 1983 and for the Tennessee torts of common law negligence, assault and battery, and intentional infliction of emotional distress.

Gregory alleges that Bird and Taylor's actions during their confrontation with Fisher "were done willfully, knowingly and recklessly to deprive Fisher of her rights to be secure in her person against unreasonable searches and seizures secured to her by the Fourth Amendment."  (Compl. ¶ 34.)  Gregory alleges that the "[i]ndividual defendants are...individually liable under Section 1983 to Fisher's estate and heir for the profound

injuries suffered by Fisher and the death of Fisher." (<u>Id.</u> at ¶ 37.)

Gregory also alleges that Bird and Taylor were negligent because they "had a duty of care owed to Fisher," and "[i]t was reasonably foreseeable that the harm which resulted to Fisher...would result from the actions and inactions of the individual defendants." (<u>Id.</u> at ¶ 39.)  He alleges that Bird and Taylor committed assault and battery against Fisher. (<u>Id.</u> at ¶ 40.)  Gregory alleges that Bird and Taylor's "actions to shoot [Fisher]" and "to allow her to stay in the vehicle, knowing she was still alive, and not to render any aid, or to call a second ambulance" satisfy the conditions of the "tort of outrage," which is known under Tennessee law as intentional infliction of emotional distress. (<u>Id.</u> at ¶ 41.)

Both Bird and Taylor move for summary judgment on Gregory's claims on the basis of qualified immunity. (Bird Mot. for Summ. J.; Taylor Mot. for Summ. J.) Each Officer incorporates by reference all arguments made by the other Officer and by Memphis. (<u>Id.</u>)

### 1. Official Capacity Claims

Gregory brings suit against Bird and Taylor in their individual and official capacities. "'Official-capacity suits represent only another way of pleading an action against an entity of which an officer is an agent.'" <u>Everson v. Leis</u>, 556

11

F.3d 484, 493-94 n.3 (6th Cir. 2009) (quoting <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978) (alterations omitted)).  "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  <u>Briner v. City of Ontario</u>, 370 F. App'x 682, 699 (6th Cir. 2010) (internal quotation marks and alterations omitted). Because Gregory brings suit against Memphis, Bird and Taylor's employer, on the same grounds, Gregory's official capacity claims are superfluous, and they are DISMISSED.

### 2. Qualified Immunity

"'[Q]ualified immunity is an immunity from suit rather than a mere defense to liability.'" <u>Green v. Throckmorton</u>, 681 F.3d 853, 864 (6th Cir. 2012) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)).  Qualified immunity "'is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.'" <u>Fisher v. Harden</u>, 398 F.3d 837, 842 (6th Cir. 2005)(quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 527-28 (1985)). It is "part [of] an entitlement not to be forced to litigate the consequences of official conduct." Id. at 527.

Qualified immunity protects officials from liability "when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights." <u>Meals v. City of Memphis</u>, 493 F.3d 720, 729 (6th Cir. 2007). "Under the doctrine of qualified immunity,

'government officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity "ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." Chappell v. City of Cleveland, 585 F.3d 901, 907 (6th Cir. 2009).  The rule "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

The Supreme Court has established a two-step inquiry to determine whether an official is entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court considers "(1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established." Mott v. Mayer, No. 12-1843, 2013 U.S. App. LEXIS 7892, at *16-17 (6th Cir. Apr. 17, 2013).  The sequence mandated in Saucier was modified in Pearson so that courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first. 555 U.S. at 236.

13

"Qualified immunity is a question of law, but 'where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.'"  McKenna v. Edgell, 617 F.3d 432, 437 (6th Cir. 2010) (quoting Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900 (6th Cir. 2004)).  The plaintiff must show that the defendant is not entitled to qualified immunity and must satisfy both prongs of the Saucier test.  Chappell, 585 F.3d at 907. The plaintiff must show that "viewing the evidence in the light most favorable to [him], a constitutional right was violated and the right was clearly established at the time of the violation." Id.  "To defeat the qualified immunity bar, a plaintiff 'must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law.'" Simmonds v. Genesee Cnty., 682 F.3d 438, 444 (6th Cir. 2012) (quoting Adams v. Metiva, 31 F.3d 375, 386 (6th Cir. 1994)).

In the summary judgment context, the plaintiff must raise "'disputes over facts that might affect the outcome of the suit under the governing law.'"  Id. (quoting Anderson, 477 U.S. at 248 (1986)).  "To make out a genuine issue of material fact, plaintiff must present significant probative evidence tending to support her version of the facts, evidence on which a reasonable

jury could return a verdict for her." Chappell, 585 F.3d at 913 (emphasis in original).

### a. Unreasonable Seizure

Gregory argues that Bird and Taylor violated Fisher's right to be free from unreasonable seizure when they executed the traffic stop.  The Officers do not dispute that they seized Fisher's person.  They argue that the conduct of their seizure was objectively reasonable at all times and that they are entitled to qualified immunity because there was no constitutional violation.

It is undisputed that the Officers observed Fisher committing a number of traffic violations.  (Gregory Resp. to Bird Undisp. Facts ¶¶ 2, 4, 12, 16, 22-23, ECF No. 218-2.) "[A]n officer's stop of a vehicle is reasonable where there is probable cause to believe that a traffic violation has occurred." United States v. Carter, 45 F. App'x 339, 343 (6th Cir. 2002).  Bird and Taylor had actual knowledge that Fisher had committed multiple traffic violations.  Their initial stop was an objectively reasonable seizure based on "what [they] knew at the time of the stop." Id.  That the Officers crossed from the Memphis city limits to Shelby County during their pursuit of Fisher is irrelevant to whether their stop was a violation of her clearly established Fourth Amendment rights.

15

The circumstances of the Officers' approach to and interaction with Fisher in her vehicle immediately before the shooting are largely undisputed.  The parties agree that Fisher pulled into a residential driveway, Taylor pulled in immediately behind her vehicle, and Bird pulled up immediately behind Taylor's vehicle.  (Gregory Resp. to Bird Undisp. Facts ¶¶ 34-35.)  They agree that Taylor acted as the primary officer and Bird acted as the secondary or cover officer.  (Id. ¶¶ 36-37.) They agree that Bird followed Taylor to the driver's side of Fisher's vehicle and that Taylor attempted to speak with Fisher, but that she was non-responsive and had a blank look on her face.  (Id. ¶¶ 40, 42-44.)  They agree that Taylor opened the car door and asked or ordered Fisher to exit, but that she did not comply and appeared to become confused, causing Taylor to attempt verbally to calm her down.  (Id. ¶¶ 45-46.)  The parties agree that Fisher remained verbally unresponsive, put her car in gear, and attempted to drive in reverse, but could not because of Taylor's car.  (Id. ¶¶ 47, 49.)  They agree that Taylor attempted to grab Fisher's hands, that she moved around to evade him, and that she restarted the car, which Taylor had previously turned off.  (Id. ¶¶ 51-53.)  They agree that Taylor took out his chemical agent, but that Bird asked him not to use it.  (Id. ¶¶ 54-55.)  They agree that both Officers were trained as members of the Memphis Police Crisis Intervention Team (CIT) and

16

that Bird believed Fisher was probably a candidate for CIT action. (Id. ¶¶ 56-57.) The parties agree that after the Officers' attempts to calm Fisher proved unsuccessful, she leaned into the vehicle and retrieved a handgun that she pointed at Taylor. (Id. ¶¶ 60, 62, 65.)

Gregory does not raise any material factual disputes about the circumstances of the Officers' stop. He argues instead that their actions were contrary to established police best practices, and therefore that they were objectively unreasonable and a violation of Fisher's Fourth Amendment rights. Gregory's argument is based on the report of his proposed expert witness, which states that the Officers' stop violated the International Association of Chiefs of Police model policies for approaching mentally ill suspects. (Gregory Resp. to Bird Mot. for Summ. J. p. 18, ECF No. 218-1.) Gregory agrees that the Officers were not aware that Fisher was suspected of being mentally ill because they had not received the BOLO. (Id.) He argues that the Officers knew or reasonably should have known that Fisher was experiencing symptoms of severe mental illness and should have acted accordingly based on their observations of her reckless driving before the stop.

Even assuming for purposes of ruling on this claim that the Officers' actions, which both parties describe as a typical traffic stop, were not the best method for conducting the stop

17

in question, their failure to meet the highest standards falls far short of establishing that their actions were objectively unreasonable.  Qualified immunity "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Chappell, 585 F.3d at 907 (quoting Hunter, 502 U.S. at 229).  A reasonable officer in Bird or Taylor's shoes both immediately before and during the stop could have believed the actions taken by the Officers were lawful.  Based on the information available to Bird and Taylor at the time of the stop, and their typical procedures, their conduct was objectively reasonable.

Bird and Taylor's actions in initially stopping Fisher and in conducting her traffic stop were objectively reasonable. Because the Officers' seizure of Fisher was reasonable, no constitutional violation was committed.  Because the first prong of the Saucier test is dispositive of this claim, the Court need not address the second prong.  See Chappell, 585 F.3d at 907. Bird and Taylor are entitled to qualified immunity on Gregory's claim of unreasonable seizure under § 1983, and his claim fails as a matter of law.  Gregory's unreasonable seizure claim under § 1983 is DISMISSED.

### b. Excessive Force - Standard

"It is axiomatic that individuals have a constitutional right not to be subjected to excessive force during an arrest,

investigatory stop, or other 'seizure'" of their persons. Chappell, 585 F.3d at 908.  Determining "'whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

When a plaintiff alleges that his Fourth Amendment rights have been violated by an official's use of excessive force, the Court applies an objective reasonableness standard.  Simmonds, 682 F.3d at 444.  The Court must determine "'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  Id. (quoting Graham, 490 U.S. at 397 (internal quotation marks omitted)).  Relevant facts and circumstances include the "'severity of the crime at issue...whether the suspect poses an immediate threat to the safety of the officers or others, and...whether he is actively resisting arrest or attempting to evade arrest by flight.'" Chappell, 585 F.3d at 908 (quoting Graham, 490 U.S. at 396).

The reasonableness of "a particular use of force is objective and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  Id. (quoting Graham, 490 U.S. at 396).

The Court must not substitute its "'notions of proper police procedure for the instantaneous decision of the officer at the scene....What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.'"  Boyd v. Baeppler, 215 F.3d 594, 602 (6th Cir. 2000) (quoting Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992)).  The analysis "'contains a built in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances.'"  Simmonds, 682 F.3d at 445 (quoting Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002)).

Although "'only in rare instances may an officer seize a suspect by use of deadly force,'" there are situations where doing so does not violate an individual's Fourth Amendment rights.  Sample v. Bailey, 409 F.3d 689, 697 (6th Cir. 2004) (quoting Whitlow v. City of Louisville, 39 F. App'x 297, 299 (6th Cir. 2002)).  The Supreme Court has held that the use of deadly force "is not constitutionally unreasonable" when an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others."  Tennessee v. Garner, 471 U.S. 1, 11 (1985).  "[A]n officer may use deadly force whenever he or she, in the face of a rapidly unfolding situation, has probable cause to believe that a suspect poses a serious physical threat either to the

police or members of the public." <u>Williams v. City of Grosse
Pointe Park</u>, 496 F.3d 482, 487 (6th Cir. 2007).  Whether the
"use of deadly force at a particular moment is reasonable
depends primarily on objective assessment of the danger a
suspect poses at that moment."  <u>Bouggess v. Mattingly</u>, 482 F.3d
886, 889 (6th Cir. 2007).  A focus on "the crux of the
case...the moments immediately preceding the alleged use of
excessive or deadly force [is] appropriate."  <u>Gentry v. Cnty. of
Wayne</u>, No. 11-2221, 2012 U.S. App. LEXIS 20623, at *4 (6th Cir.
Oct. 1, 2012).

### c. Excessive Force - Analysis

Gregory has not offered sufficient facts to establish that
Bird and Taylor should not receive qualified immunity.  Gregory
has not shown that Bird or Taylor used excessive force when they
shot at Fisher, and therefore he cannot show that they violated
Fisher's constitutional rights by unreasonably seizing her
person.  In the totality of the circumstances, Bird and Taylor's
decisions to shoot at Fisher were objectively reasonable, and
they are entitled to qualified immunity on all claims based on
their decisions.  Gregory's facts are insufficient to establish
a genuine dispute of material fact that would permit the Court
to submit the determination of qualified immunity to the jury.

Although Gregory and the Officers have a number of factual
disagreements about the events of May 13 and 14, 2006, Gregory

does not argue that any of the facts directly related to the alleged use of excessive force are in dispute.  Gregory does point out that, although both Bird and Taylor testified that Fisher shot first during the encounter, Gregory's ballistics expert found that the sequence of shots fired could not be conclusively determined.  (Gregory Resp. to Bird Undisp. Facts ¶¶ 66-67.)  Because the circumstances of the Officers' encounter with Fisher made it reasonable for them to use deadly force before Fisher fired, the factual question of who shot first would not change the outcome under the governing law.

Gregory agrees with the Officers on all of the relevant circumstances at the moment the Officers were forced to decide how to act.  Gregory agrees that the Officers were not aware of the BOLO stating that Fisher was at large and experiencing symptoms of mental illness.  (See Id. ¶ 8.)  He agrees that the Officers encountered Fisher as a reckless, erratic driver and followed her into a residential neighborhood.  (Id. ¶¶ 4, 12, 15-18, 21, 27, 32.)  He agrees that Fisher appeared "blank" and "confused."  (Id. ¶¶ 42, 46.)  He agrees that Fisher was verbally unresponsive to the Officers' requests and orders and that she was non-compliant with repeated police instructions.  (Id. ¶¶ 42-49, 51-53.)  He agrees that Fisher attempted to drive away from the Officers, but was unable to do so because of the location of Taylor's vehicle.  (Id. ¶ 49.)  Most importantly,

Gregory agrees that Fisher leaned into the car as the Officers were attempting to remove her and retrieved a firearm from inside the console.  (Id. ¶ 62.) He agrees that both of the Officers saw the gun and verbally alerted to its presence.  (Id. ¶ 63.)  He agrees that Fisher pointed the gun at Officer Taylor and fired.  (Id. ¶ 65.)

By Gregory's admissions, Fisher resisted arrest, attempted to flee, and presented an objective threat of serious physical harm to the Officers.  Even before Fisher fired her weapon, she posed an immediate threat to Bird and Taylor.  "When a person aims a weapon in a police officer's direction, that officer has an objectively reasonable basis for believing that the person poses a significant risk of serious injury or death." Greathouse v. Couch, 433 F. App'x 370, 373 (6th Cir. 2011).  "A police officer need not wait for a suspect to open fire on him, much less wait for the suspect to actually hit him, before the officer may fire back."  Id.  There is no dispute that Fisher pointed a gun at Taylor.  In the crucial moment with the information available to them at the time, it was objectively reasonable for the Officers to believe that Fisher posed a significant risk of death or serious injury.

In the totality of the circumstances, at the moment before the shooting began, Bird and Taylor had probable cause to believe that Fisher posed a threat of serious physical harm, and

it was objectively reasonable for them to respond to her
immediate threat of deadly force with deadly force.  Because the
Officers' seizure of Fisher's person was objectively reasonable,
no constitutional violation was committed.  Because the
Officers' actions did not violate a constitutional right, they
are entitled to qualified immunity.  Because the first prong of
the Saucier test is dispositive on this claim, the Court need
not address the second prong.  See Chappell, 585 F.3d at 907.
Bird and Taylor are entitled to qualified immunity on Gregory's
claim of excessive force under § 1983, and his claim fails as a
matter of law.  Gregory's excessive force claim under § 1983 is
DISMISSED.

### 3. Substantive Due Process

In Gregory's Response to Bird's Motion for Summary
Judgment, he argues that he has stated a claim under § 1983 for
violation of Fisher's substantive due process rights under the
Fourteenth Amendment.  Gregory argues that Fisher was deprived
of her rights when Bird failed to render medical aid to her
after the shooting.  This claim is not properly before the
Court.  Gregory did not allege it in his Complaint and did not
attempt to amend his Complaint to add it.  Gregory makes
reference to this claim only in his Response.  Because Gregory
does not state a claim for violation of Fisher's Fourteenth

Amendment rights on which relief can be granted, his claim is
DISMISSED.

### 4. State Law Claims

Gregory's Complaint sets forth claims against Bird and
Taylor in their individual capacities, alleging that they
committed the Tennessee torts of negligence, assault and
battery, and intentional infliction of emotional distress.  Bird
and Taylor argue that the Court should grant summary judgment in
their favor because they are entitled to qualified immunity on
Gregory's state law claims on the same grounds as his § 1983
claims.  (Bird Resp.; Taylor Resp.) In the alternative, they
argue that they are entitled to immunity under § 29-20-310(b) of
the Tennessee Governmental Tort Liability Act, Tenn. Code Ann.
§§ 29-20-101, et seq. ("TGTLA"), because their employer,
Memphis, has waived its sovereign immunity for injuries caused
by the negligent acts and omissions of employees acting within
the scope of their employment.  (Id.)

The Officers have argued that they are entitled to judgment
as a matter of law and that the record could not lead a rational
trier of fact to find in favor of Gregory on these claims.  See
Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56.  Gregory
appears to have abandoned these claims.  He makes no legal
arguments addressing the alleged state torts and identifies no
facts in the record which would allow the Court to conclude that

25

a genuine dispute of material fact exists about the Officers'
entitlement to immunity.  (See generally Gregory Resp. to Bird
Mot. for Summ. J.; Gregory Resp. to Taylor Mot. for Summ. J.)
"The nonmoving party may not rest upon his pleadings; rather,
the nonmoving party's response 'must set forth specific facts
showing that there is a genuine issue for trial.'"  Williams v.
Leatherwood, 258 F. App'x 817, 820 (6th Cir. 2007) (quoting Fed.
R. Civ. P. 56(e)).

       Gregory has not properly supported his opposition to Bird
and Taylor's claims that they are entitled to judgment as a
matter of law on Gregory's state tort claims.  Gregory's state
law tort claims against Bird and Taylor are DISMISSED.

       **B. Memphis**

       Gregory brings suit against Memphis for violation of
Fisher's constitutional rights under 42 U.S.C. § 1983 and for
common law negligence and assault and battery.  He argues that
Memphis has a policy, custom, or pattern of conduct that
violates the rights of persons under the color of law.

                   **1. 42 U.S.C. § 1983**

        "When 'no constitutional violation by the individual
defendants is established, the municipal defendants cannot be
held liable under § 1983.'"  Estate of Hickman v. Moore, Nos.
11-5120/5499/6320, 2012 U.S. App. LEXIS 21368, at *19 (6th Cir.
Oct. 15, 2012) (quoting Watkins v. City of Battle Creek, 273

                              26

F.3d 682, 687 (6th Cir. 2001)).  As discussed above, Bird and
Taylor's actions were objectively reasonable and did not violate
Fisher's Fourth Amendment rights.  Because Gregory has not
established any constitutional violation, his cause of action
against Memphis fails as a matter of law.  Memphis' Motion for
Summary Judgment on Gregory's § 1983 claims is GRANTED.

### 2. State Law Claims

Gregory's state law claims for negligence and assault and
battery against Memphis fail as a matter of law because he does
not properly allege them under the TGTLA.  Under Tennessee law,
sovereign immunity for municipal entities is absolute except
where explicitly removed by statute.  See Fretwell v. Chaffin
652 S.W.2d 755 (Tenn. 1983); Tenn. Code Ann. § 29-20-201.  There
is no common law cause of action for negligence or assault and
battery against a municipal entity in Tennessee.  The TGTLA
removes governmental immunity for "injur[ies] proximately caused
by a negligent act or omission of any employee within the scope
of his employment" with explicitly stated exceptions.  Tenn.
Code Ann. § 29-20-201.  Municipal entities retain immunity for
all claims not covered by the TGTLA and for all exceptions to
the waiver of immunity for negligent acts.  See Id.

When immunity is removed under the TGTLA, an action for
damages must be brought in "strict compliance" with the
requirements of the statute.  Tenn. Code Ann. § 29-20-201.  The

"'sovereign immunity provided for by the GTLA is a jurisdictional prerequisite rather than an affirmative defense that can be waived if not pled.'" Uhuru v. City of Memphis, No. 08-2150-V, 2008 U.S. Dist. LEXIS 83243, at * 27 (W.D. Tenn. Oct. 17, 2008) (quoting Alexander v. Beale Street Blues Co., 108 F. Supp. 2d 934, 948 (W.D. Tenn. 1999)). To bring a claim against Memphis, Gregory "was required to plead compliance with the GTLA in order to satisfy Federal Rule of Civil Procedure 8(a)." Buckley v. City of Memphis, No. 03-2874 DP, 2004 U.S. Dist. LEXIS 7773, at *15 (W.D. Tenn. May 4, 2004).

In this District, although courts require plaintiffs to plead state law torts against municipal entities under the TGTLA, cases in which those torts are not properly alleged ordinarily are allowed to proceed after amendment. See, e.g., Uhuru, 2008 U.S. Dist. LEXIS 83243, at *27-29; Buckley, 2004 U.S. Dist. LEXIS 7773, at *16. In this case, the Court has already considered, and denied as untimely and futile, Gregory's attempt to amend his Complaint to allege his state law claims under the TGTLA. (Order Denying Mot. to Amend, ECF No. 238.) The Court found that Gregory's state tort claims arose from the same circumstances giving rise to his civil rights claims under § 1983 and were therefore barred by the civil rights exception to the TGTLA's waiver of immunity. (Id.); see also Tenn. Code Ann. § 29-20-201(2).

28

Because amendment has been denied in this case and because Gregory cannot bring his claims within the waiver of the TGTLA as required, his state law tort claims fail as a matter of law. Memphis' Motion for Summary Judgment on Gregory's state tort claims is GRANTED.

### C. Taylor Crossclaim

On July 20, 2007, Taylor filed an answer to Gregory's Complaint stating a crossclaim against Memphis. (Taylor Crossclaim, ECF No. 7.); see Fed. R. Civ. P. 13(g). On August 2, 2007, Memphis filed an answer to Taylor's crossclaim. (Memphis Answer to Taylor, ECF No. 9.) Memphis filed a combined Motion for Summary Judgment against Gregory and Taylor on September 21, 2012. (Memphis Mot. for Summ. J., ECF No. 196.) Taylor filed a response in opposition to Memphis' Motion on November 21, 2012. (Taylor Resp. to Memphis Mot. for Summ. J., ECF No. 217.)

Taylor's crossclaim alleges that Memphis was negligent during the events of May 13-14, 2006, because it failed to exercise ordinary care and diligence in relaying to Taylor and Bird the information allegedly contained in the BOLO, specifically that Fisher was experiencing symptoms of mental illness and was possibly armed. (Taylor Crossclaim ¶¶ 63-64.) Taylor alleges that Memphis' negligence was the proximate cause of the injuries he sustained. (Id. at ¶ 65.)

29

Memphis agrees that Taylor has properly alleged his negligence claim under the TGTLA. (Memphis Mot. for Summ. J., p. 20.) It argues, however, that Taylor's claim is barred by one or more exceptions to the waiver of sovereign immunity in the TGTLA.

### 1. Civil Rights Exception

Memphis argues that not only Gregory's, but also Taylor's, claim should be barred by the civil rights exception to the TGTLA. (See Id.); Tenn. Code. Ann. § 29-20-205(2) ("Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of...civil rights.").

Taylor does not allege a violation of his civil rights, but rather that his employer, Memphis, negligently failed to warn him of circumstances that led to a reasonably foreseeable injury to him in his line of duty. See Parker v. Henderson Cnty., No. W2009-00975-COA-R3-CV, 2010 Tenn. App. LEXIS 86, at *14 (Tenn. Ct. App. Feb. 4, 2010) (plaintiff "has neither pleaded nor argued in the present proceeding that the City or its officers violated his federal civil rights...there is no basis for this Court to conclude that [his] injury arose out of a violation of his federal civil rights."). The relationship between Gregory's

30

civil rights claims and Taylor's negligence claim is too tenuous to support an argument that Taylor's claim is "in essence a civil rights suit." Campbell v. Anderson Cnty., 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010); see also Mckenna v. City of Memphis, 544 F. Supp. 415, 419 (W.D. Tenn. 1982) (the TGTLA "only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law."). It would deny Taylor's rights under the TGTLA to say that he could not bring a claim sounding in negligence because a third party brought claims arising from the incident based on an alleged violation of that party's civil rights.

## 2. Discretionary Function Exception

Memphis argues that Taylor's claim is barred by the discretionary function exception to the TGTLA. (Memphis Mot. for Summ. J., p. 21.) The statute states that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of...[t]he exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." Tenn. Code Ann. § 29-20-205(1). The purpose of the exception is "to prevent courts from questioning decisions of governmental entities that are primarily

legislative or administrative." <u>Giggers v. Memphis Housing</u>
<u>Auth.</u>, 363 S.W.3d 500, 507 (Tenn. 2012).

Courts apply the "planning-operational test" to determine
whether the exception applies.  <u>Id.</u>  Immunity is preserved for
actions involving planning or policy-making, decisions that
"usually involve[] consideration and debate regarding a
particular course of action by those charged with formulating
plans or policies."  <u>Id.</u>  Planning decisions "frequently
require[] a governmental entity to create policies or plans,
formulate specifications or schedules, allocate resources, or
determine priorities."  <u>Id.</u>  Operational decisions "implement
'preexisting laws, regulations, policies, or standards' that are
designed to guide the actions of the governmental entity."  <u>Id.</u>
(quoting <u>Bowers v. City of Chattanooga</u>, 826 S.W.2d 427, 431
(Tenn. 1992)).  An operational decision "requires that the
decision-maker act reasonably when implementing preexisting
policy," and "does not involve the formulation of new policy."
<u>Id.</u> at 507-08.

Memphis argues that its "actions with regard to its
training and supervision are policymaking decisions and
therefore discretionary."  (Memphis Mot. for Summ. J., p. 22.)
Taylor argues that Memphis' argument is directed solely at
Gregory and not at him because he alleges that Memphis failed in
its duty to protect police officers, not that it negligently

trained and supervised its employees.  (Taylor Resp. to Memphis
Mot. for Summ. J., p. 12.)  Memphis' memorandum of law does not
directly address the arguments Taylor makes and does not present
any factual support for its assertion that its decisions were
policy-based.  Because Memphis has not presented any facts that
would allow the Court to conclude that there is no genuine
dispute of material fact about whether Memphis' decisions
concerning the safety of police officers were policy-based or
merely the operational implementation of preexisting policies,
summary judgment would be inappropriate on this ground.

### 3. Public Duty Doctrine

Memphis argues that the common law defense of the public
duty doctrine shields it from liability.  Taylor argues that
Memphis' argument is directed solely to the claims raised by
Gregory and does not address the negligence that Taylor alleges.
Taylor argues that the public duty doctrine is inapplicable
because the duty of care that he alleges Memphis violated by
failing to relay the BOLO was one owed to the Officers on duty
and not to the public at large.  (Taylor Resp. p. 17.)  He also
argues that, even if the public duty doctrine applies, he falls
within one of the special relationship exceptions because he is
an employee of Memphis.  (Id. at p. 16-17.)

The public duty doctrine "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." Ezell v. Cockrell, 902 S.W.2d 394, 397 (Tenn. 1995). Although the TGTLA purports to codify and delimit governmental immunity in Tennessee in its entirety, the Tennessee Supreme Court has held that the statute does not abolish the public duty doctrine. Id. at 400-01. The doctrine immunizes both municipal entities and their employees from suit. Matthews v. Pickett Cnty., 996 S.W.2d 162, 163 (Tenn. 1999) ("the public duty doctrine...shields public entities and public employees from tort liability for injuries caused by a breach of duty owed to the public at large.").

An exception to the public duty doctrine applies, and liability can be found, where a "special relationship exists between the plaintiff and the public employee, which gives rise to a special duty that is more particular than the duty owed by the employee to the public at large." Id. at 401 (internal quotation marks omitted). In Tennessee, a:

> special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff and the plaintiff relies upon that undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

34

Id. at 402.

Taylor's argument that a special duty of care exists and that Memphis is liable to him on the basis of his employer-employee relationship does not appear to be supported by the case law.  Absent a specific statutory cause of action, the Tennessee Supreme Court has found the existence of a special relationship only when the governmental entity has undertaken to protect a specific individual and has informed that individual of its intent to do so.  See Matthews, 996 S.W.2d at 164-65; Chase v. City of Memphis, No. 02S01-9703-CV-00019, 1998 Tenn. LEXIS 435, at *14 (Tenn. July 21, 1998).

Although no exception applies, the public duty doctrine is inapplicable in this case because Memphis has made no attempt to demonstrate that its alleged duty to protect its police officers or to inform them of known potential dangers is a duty owed to the public generally.  Because Memphis' basis for immunity is unsupported by any facts, the public duty doctrine cannot support a motion for summary judgment.

### 4. Other Challenges

Memphis' Motion for Summary Judgment relies on a claim that it is immune from liability for Taylor's crossclaim of negligence.  Memphis does not otherwise challenge the legal or factual basis for Taylor's crossclaim.  Because the Court has

35

found that Memphis is not entitled to judgment as a matter of law on any of its theories of immunity, Taylor's crossclaim survives and is ripe for trial. Memphis' Motion for Summary Judgment on Taylor's crossclaim is DENIED.

### D. Taylor Counterclaim

On July 20, 2007, Taylor filed an answer to Gregory's Complaint stating a counterclaim against Gregory. (Taylor Counterclaim, ECF No. 7.); see Fed. R. Civ. P. 13(a). On July 30, 2007, Gregory filed an answer to Taylor's counterclaim. (Gregory Answer, ECF No. 8.) Gregory has not subsequently filed any dispositive motion in response to Taylor's counterclaim, and the time to do so has passed. Taylor's counterclaim survives and is ripe for trial.

### V.   Conclusion

For the foregoing reasons Memphis' Motion for Summary Judgment on Gregory's claims is GRANTED. Memphis' Motion for Summary Judgment on Taylor's crossclaim is DENIED. Bird's Motion for Summary Judgment on Gregory's claims is GRANTED. Taylor's Motion for Summary Judgment on Gregory's claims is GRANTED.


So ordered this 10th day of May, 2013.


s/ Samuel H. Mays, Jr.____
SAMUEL H. MAYS, JR.

UNITED STATES DISTRICT JUDGE